## Vin E. Williams, Appellant, *v.* J. M. Guffy and Andrew W. Mellon.

*Lease—Oil and gas lease—Termination of lease.*

An oil and gas lease stipulated that it was " for the sole and only purpose of drilling and operating wells and storing and transporting oil or gas . . . . to have and to hold said premises . . . . for and during until the full term of twenty years." The lease further stipulated that if gas should be obtained in sufficient quantities and utilized, $500 per year should be paid for each and every well drilled. The lessee was to complete one well within six months of the lease; " if oil and gas or neither is found on this property within two years from date then this lease to expire and be of no effect." The lessees completed a well within six months, and found gas and utilized it, and subsequently the land became exhausted, and no more gas was produced. *Held*, that the lessees were not liable for rent after the cessation of the production of gas and use of well.

Argued October 27, 1896. Appeal, No. 26, Oct. T., 1896, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., May Term, 1894, No. 602, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a gas lease.

The material portions of the lease were as follows:

"This lease, made this 11th day of December, A. D. 1885, by and between Gotleab Minsinger of the county of Allegheny and state of Pennsylvania of the first part, and J. M. Guffey & Co., of Pittsburg, Penna., of the second part,

"Witnesseth, That the said party of the first part, in consideration of the stipulations, rents and covenants hereinafter con-

tained, on the part of the said parties of the second part, their executors, administrators and assigns, to be paid, kept and performed, has granted, demised and let unto the said parties of the second part, their executors, administrators and assigns, for the sole and only purpose of drilling and operating wells, and storing, transporting and conveying petroleum oil or gas through, over and from all that certain tract of land situated in Hempfield township, Westmoreland county and state of Pennsylvania, bounded and described as follows, to wit: . . . .

" To have and to hold the said premises, for the said purpose only, unto the parties of the second part, their executors, administrators and assigns, for, during and until the full term of twenty (20) years next ensuing the day and year above written.

" The said parties of the second part hereby covenant in consideration of the said grant and demise to deliver unto the said party of the first part, his heirs and assigns, the full and equal one-eighth ($\frac{1}{8}$) part of the petroleum oil discovered and produced on the premises herein leased, and deliver the same in pipe lines to the credit of the party of the first part free of charge. It is further agreed that if gas is obtained in sufficient quantities and utilized, the consideration, in full to the party of the first part shall be five hundred (500) dollars for each and every well drilled on the premises herein described, per annum, payable within sixty days after completion of such well, and thereafter yearly in advance at Third National Bank, Pittsburg, Pa. . . .

" Operations on the above described premises shall be commenced and one well completed within six months from the date hereof, and in case of a failure to complete one well within such time, the parties of the second part hereby agree to pay to party of the first part for such delay the sum of seventy-three ($73) dollars per annum, within three months after the time for completing such well as above specified, payable at Third National Bank, Pittsburg, Pa., and the party of the first part hereby agree to accept such sum as full consideration and payment for such yearly delay until one well shall be completed, and a failure to complete one well or to make any of such payments within such time and at such place as above mentioned, renders this lease null and void, and to remain without effect between the parties hereto.

"If oil and gas, or neither, is found on this property within two (2) years from date then this lease to expire and to be of no effect."

The court charged in part as follows:

[Under the terms of this lease, the parties had a right to drill for oil or gas. Under the terms of this lease, if they found gas, they were to pay for the wells under this clause, $500 per annum; the first payment had to be made within sixty days after the completion of the well, and for subsequent years they had to pay $500 for each well in advance; it was for that well, it was not for rent of premises generally, it was for the use of that well.] [2]

The rental for this farm, under this lease, or the amount that was to be paid under this agreement, was not limited to the payments made for these wells used for the purposes of gas. If the parties had gone on after the gas had been discovered and discovered a profitable oil well, the owner of the farm would still have been entitled to his royalties, under another clause in this lease, in oil.

This was, then, an agreement to pay for the use of the wells, the gas wells. The prerequisite to the payment on any gas well was that gas should be found in sufficient quantities to utilize. This one well was drilled and it was utilized. No others were drilled, and it is only with this well which you have to do. The rental for this well was paid down to November, 1891, and in November, 1891, a payment of $500 was made, being the payment in advance for the year terminating in November, 1892. Down until that time there is no question. The rent was paid to November, 1892. Was this well utilized after that time? The defendant has undertaken to show you that the gas ceased to be used from that well in June or July, 1892, and that its connection with the pipe lines, that is, the means by which it was carried to the market, had been severed, and the connecting pipe taken out, which led over to another farm, some time in July, 1892. They say that at that time they ceased to use it and that it was their intention permanently to do so. The severance of the connection and the taking up of the line leading to the other farm ended its use as a gas well permanently. That in December the tubing was directed to be

drawn and that in the following spring some time the derrick was taken down and the tubing removed from the premises, and there is no evidence that anything has been done on the farm since. If you believe the testimony of the witnesses in the case, the well had no gas in it whatever that was discernible when the tubing was drawn. [Now, gentlemen, if these defendants, or those acting under the lease because of any assignment, in July, permanently ceased to use this as a gas well, then there can be no recovery in this action.] [3] If they simply suspended the use of it, intending to resume, and continued to hold it thus until December, experimenting with it in the hope or expectation that the gas would return in sufficient quantities, and so continued down until December, when they found that the gas had departed altogether, then they would be liable for the rental of $500 coming due November 21, 1892, with interest from that date down to the present time. [But in case they had permanently ceased its use before the 20th of November, and were not at that time holding it with the intention of holding it as a gas well, then there could be no recovery in this action.] [4] The defendants would have the right within a reasonable time afterwards, under this lease, to remove their casing and such other machinery as they had, in a reasonable manner. They would have a right to a reasonable time in which to get the property away, considering the nature of the property and the difficulty of taking it away.

The learned counsel representing the plaintiff has requested the court to charge you, that under all the evidence in the case the plaintiff is entitled to a verdict for all the rental claimed in plaintiff's statement, with interest to date. *Answer:* This point is refused. [1]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*J. H. White*, with him *S. W. Childs*, for appellant.—If oil or gas was found in paying quantities then the contract took effect as an oil lease, and the lessee had a right, and was under a contract obligation, to operate the land for the production of oil during the time and upon the terms fixed in the lease : Venture Oil Co. v. Fretts, 152 Pa. 451 ; McNish v. Stone, 152 Pa. 457 ;

Plummer v. Hillside Coal & Iron Co., 160 Pa. 483. Where the buildings on leased premises are destroyed, either totally or partially, and there is no exoneration from rent in case of fire, the tenant is responsible for rent during the term: Bussman v. Ganster, 72 Pa. 285 ; Hoy v. Holt, 91 Pa. 88 ; Hoeveler v. Fleming & Co., 91 Pa. 322 ; Heller v. Royal Ins. Co., 151 Pa. 101 ; Magaw v. Lambert, 3 Pa. 444 ; Fisher v. Milliken, 8 Pa. 111 ; Pollard v. Shaffer, 1 Dallas, 210 ; Timlin v. Brown, 158 Pa. 606 ; Boyer v. Fulmer, 11 Lanc. 209.

*Willis F. McCook*, for appellee, was not heard, but cited in his printed brief: Harlan v. Lehigh Coal & Navigation Co., 35 Pa. 293 ; Muhlenberg v. Henning, 116 Pa. 138 ; Kemble Coal & Iron Co. v. Scott, 15 W. N. C. 220 ; McCahan v. Wharton, 121 Pa. 437.

Per Curiam, November 9, 1896 :

The learned trial judge was clearly right in refusing to withdraw the case from the jury by giving the binding instructions recited in the first specification of error.

We find no error in either of the excerpts from the charge recited in the three remaining specifications respectively; nor do we think there is any question in either of them that calls for discussion. The assignments of error are accordingly dismissed, and the judgment affirmed.