210    484
38SC 2124

## Wilson *v.* Philadelphia Company, Appellant.

*Oil and gas leases—Rental—Abandonment—Notice.*

When the right of possession for operating purposes has been acquired under an oil and gas lease, by a successful search for the product, the lessee becomes answerable for the stipulated rental according to the terms of the agreement and is relieved of that liability only by showing payment, or notice to the lessor, either written or verbal, of abandonment. This is a wholesome rule tending to promote certainty in the determination of disputes in this class of contracts: Double v. Union Heat & Light Co., 172 Pa. 388, approved and followed.

Argued Nov. 1, 1904. Appeal, No. 67, Oct. T., 1904, by defendant, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1901, No. 25, on verdict for plaintiffs in case of Annie Wilson et al. v. Philadelphia Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit on an oil and gas lease.    Before COLLIER, P. J.
The facts are stated in the opinion of the Supreme Court.
Defendant offered the following points :

1. That if the jury find from the evidence that the defendant permanently ceased to use these wells as gas wells, on account of the failure of those wells to produce gas, then the plaintiffs are entitled to recover only the rent of those wells for the years up to and including the time when those wells were abandoned. *Answer :* Refused. [1]

2. That if the jury find that the defendant permanently ceased to use these wells as gas wells, notice to the plaintiffs of such abandonment was unnecessary, and the defendant was not liable for any rental for the years following such abandonment. *Answer :* Refused. [2]

3. That if the jury find that the defendant permanently ceased the use of well No. 777 as a gas well before April 14, 1899, and permanently ceased the use of well No. 778 as a gas well, before November 16, 1899, then they should find for the plaintiffs a verdict in the sum of $250, with interest from November 16, 1899, and no more.    *Answer :* Refused. [3]

4. That under all the evidence in this case the verdict should be for the plaintiffs for $250, with interest from November 16, 1899, and no more.    *Answer :* Refused. [4]

The court charged in part as follows :

[You will remember the lease was not for the whole farm ; it was only for the wells.   You heard what one witness said, that she understood, or she knew, they had disconnected the wells, but it must be more than that.   I say to you that you should find for the plaintiffs the amount of their claim unless you are satisfied that the plaintiffs, or any one of them, got notice that the gas was giving out, was getting so weak that it was no use, and that the defendant abandoned the whole thing. If you do not find that, you should find for the plaintiffs.   It was not necessary that the notice of the surrender of the lease should be in writing ; it could be done by word of mouth, by telling them.   If you find that it was abandoned and notice was given, then you should still find for the plaintiffs in the sum of $250, with interest, because that is the amount admitted to be due in any event.] [5]

Verdict and judgment for plaintiff for $1,769.43.    Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*David A. Reed* of *Reed, Smith, Shaw & Beal,* for appellant. —The royalty ceased when the gas ceased: Williams v. Guffy, 178 Pa. 342; Boyer v. Fulmer, 176 Pa. 282; McConnell v. Lawrence County Gas Co., 47 Pittsburg Leg. Journ. 346.

Surrender of the lease was unnecessary : Venture Oil Co. v. Fretts, 152 Pa. 451 ; Cole v. Taylor, 8 Pa. Superior Ct. 19.

*Frank C. McGirr,* with him *John Marron,* for appellees.— Plaintiffs were entitled to notice of abandonment: Double v. Union Heat & Light Co., 172 Pa. 388; Nesbit v. Godfrey, 155 Pa. 251.

OPINION BY MR. JUSTICE DEAN, December 31, 1904 :

This suit was to enforce payment of the consideration which defendant agreed to pay plaintiffs for an oil and gas lease of fifty-eight acres of land in Allegheny county.    The term of the lease was fifteen years and so much longer as oil and gas could be produced in paying quantities.    As no oil was found we need not concern ourselves with the stipulations as to oil. Gas was found and this dispute is concerning the rights and liabilities of the parties in reference to that product.    The party of the second part was to commence drilling within three months ; if gas was found in paying quantities the consideration in full was to be $500 per annum for the gas from each well when utilized ; it further agreed that on the completion of the first well, the party of the second part was to have a lease of the remainder of the farm on payment of a bonus of $600 ; it was further agreed that the party of the second part should have the right at any time to surrender the lease and be released from all moneys due and conditions unfulfilled ; then from that time the lease was to be null and void and no longer binding on either party.

The Philadelphia company drilled two wells, one November 15, 1895, No. 778, the other April 15, 1896, No. 777. Both wells at first produced gas, which defendant utilized, and for each of these for the first year defendant was bound to

pay by the agreement $500. The defendant paid the rental on this well and for the succeeding years up to and including the year 1898. On No. 777 it paid the rental up to and including the year 1899. As the flow of gas was diminishing, by supplemental agreements plaintiffs reduced the rentals on both wells, that of 778 to $250 per year commencing November 15, 1898 and that on 777 to $250, and then a further reduction on 777 was made to $150 per year beginning April 15, 1897. The agreement for this last reduction gave to defendant the right to surrender the lease at any time.

This suit was brought June 5, 1901; the plaintiffs in their statement then claimed there was due them from defendant, for one well, two years and six months' rent, and for the other three years and six months' rent. There was no dispute at the trial as to the amount recoverable by plaintiffs if they were entitled to recover at all more than $250, which defendant admitted to be due and had tendered to plaintiffs; the entire dispute then turned on whether the lease had been abandoned by defendant when as it is alleged gas had ceased to flow in paying quantity and it had, therefore, ceased to utilize it. The learned trial judge, adopting in substance our opinion in Double v. Union Heat and Light Co., 172 Pa. 388 as the law of the case, left the evidence of abandonment to the jury on that question, almost, however, if not altogether, instructing them to find for plaintiffs which the jury promptly did.

The learned counsel for appellant has preferred five specifications of error. The substance of the complaint is this language of the court in its instructions to the jury: " I say to you that you should find for the plaintiffs the amount of their claim unless you are satisfied that the plaintiffs, or any one of them, got notice that the gas was giving out, was getting so weak that it was no use, and that defendant abandoned the whole thing."

The idea conveyed to the jury by this instruction is in exact accord with the decision in the Double case already noticed; the lease in this case is almost exactly the one in the Double case. The evidence in this case tending to show surrender of the lease or notice that it was abandoned scarcely amounted to a scintilla. It was strong, that the defendant because of unproductiveness had ceased to operate the wells, and as to one

well had actuallly disconnected its pipes and drawn the casing; but it had not surrendered the lease nor had it given written or verbal notice of abandonment. By the written contract it was entitled to a restricted possession of plaintiffs' land for gas purposes. This excluded plaintiffs or other lessees from an occupancy for the same purpose until the company under their contract gave them notice they had abandoned this right of restricted possession. If plaintiffs had disturbed this possession they were answerable to defendant as trespassers if it so chose to regard them. The Double case only followed Nesbit v. Godfrey, 155 Pa. 251. The case is very meagerly reported. The question raised is not exactly the same on the facts while the written lease is substantially the same. The rental there was $75.00 per year; the defendant notified plaintiff the day after one year had elapsed, that they elected to terminate the lease; it was held this was too late for them to escape the second year's payment; that the law would not divide the contract period by which the rental was fixed into fractions measured by the date of the notice. But the necessity of notice was conceded by both sides and recognized by the court below and by this court.

While the numerous decisions of these oil and gas contracts are sometimes apparently inconsistent, yet they have always, in the view of this court, harmonized. The industry of the learned counsel for appellant has pointed out to us several cases which apparently are in conflict with the Double case, but when closely examined they do not conflict with that ruling. In Williams v. Guffy, 178 Pa. 342 the annual payment was to be $500 for each well, with the right to abandon in case the gas ceased to flow in sufficient quantity to be utilized. On suit by the lessors for rent, defendant averred that the lease had been actually abandoned. The character of the evidence necessary to establish the fact of abandonment, whether by notice or unequivocal acts, was not even raised in this court, which confirmed the judgment in a per curiam opinion. We have no doubt, if the question had been raised here, we would have ruled it on the authority of the Double case, which was decided in a carefully considered opinion only the year before. Neither was the point raised in McConnell v. Lawrence County Gas Co., 47 P. L. J. 346. In Venture Oil Co. v. Fretts, 152 Pa.

451, although the lease was much like the one before us, it was an oil lease and a test well was to be sunk. It was sunk and no oil found; thereupon the lessee abandoned the land. Seven years afterwards the owner again leased the land and the first lessee brought ejectment. It was argued by plaintiff, that no presumption of abandonment arose from the mere cessation of active operations for seven years and that his interest in the land remained in the absence of formal surrender or abandonment and his right to possession was not lost. The court said no; that a perfect title under the lease which existed until formal notice of abandonment was shown, had not been acquired by the lessee; that the right became fixed only when the result of the test well demonstrated the existence of oil in paying quantities; that no oil having been found, and the lessee having thereupon left the land, that was notice enough of the end of his right under the lease.

To the same effect is McNish v. Stone reported in a note to Venture Oil Co. v. Fretts, 152 Pa. 451, but not regularly reported, in which the court on similar facts held, that the right of search under the contract was one thing and the right to operate for a period of years another; that if the search is successful then the right of extended possession accrues, which can only be lost by notice of abandonment; but the right of possession to search is gone when the search proves fruitless and so with all the cases cited by appellant's able counsel. When closely examined, they will be found not to trench one iota on the doctrine laid down in the Double case and we unhesitatingly adhere to it. We again say that when the right of possession for operating purposes has been acquired, as here, by a successful search for the product, the lessee becomes answerable for the stipulated rental according to the terms of the agreement and is relieved of that liability only by showing payment, or notice to the lessor, either written or verbal, of abandonment. As neither was shown in this case, we decline to disturb the verdict. And it is a wholesome rule tending to promote certainty in the determination of disputes in this class of contracts.

All the assignments of error are overruled and the judgment is affirmed.